**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**ANGELA BUFORD,**

    **Plaintiff,**

**vs.**                    **CASE NO. 3:21-CV-00368-MCR-MAF**

**KILOLO KIJAKAZI,
Acting Commissioner of
Social Security Administration,**

    **Defendant.**
_____/

## <u>REPORT AND RECOMMENDATION</u>

This Cause comes before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's applications for Title II, for a period of disability insurance benefits, and Title XVI, for supplemental security income benefits, under the Social Security Act. After careful consideration of the record, for the reasons stated below, the decision of the Commissioner should be affirmed.

## I.    Procedural History

On or about June 7, 2019, Plaintiff filed concurrent applications for disability and supplemental security income benefits alleging her disability

began on May 31, 2019. Tr. 18.[1] Plaintiff alleged she became disabled because of asthma, a left heel spur, and arthritis in her left knee. The Commissioner initially denied Plaintiff's claims on October 2, 2019, and upon reconsideration on January 3, 2020. Tr. 126-46.

Plaintiff requested an administrative hearing. On September 2, 2020, Administrative Law Judge (ALJ), Claire R. Strong, presided over the telephonic hearing. Tr. 34-67. Plaintiff was represented by counsel. Id. Plaintiff and Stephen Cosgrove, Ed.D., an impartial vocational expert (VE), testified. Tr. 38-56 (Plaintiff's testimony); Tr. 58-66 (Cosgrove's testimony); Tr. 327 (Cosgrove's resume).

On November 4, 2020, the ALJ issued a decision denying Plaintiff's applications for benefits. Tr. 15-33. The ALJ purportedly considered "all the evidence," including Plaintiff's medical records, and found that Plaintiff was not disabled. Tr. 19, 27. On February 21, 2021, the Appeals Council denied review making the ALJ's decision the final decision of the Commissioner. Tr. 4-6. Plaintiff filed her complaint with this court on March 4, 2021. ECF No. 1. Defendant filed an answer on August 17, 2021. ECF No. 7. The parties filed memoranda of law, which have been considered. ECF Nos. 12, 13.

---

[1] Citations to the transcript/administrative record, ECF No. 8, shall be by the symbol "Tr." followed by the page number that appears in the lower right corner.

## II.    Plaintiff's Claims

Plaintiff claims that the Commissioner's decision should be reversed because the ALJ's residual functional capacity (RFC) determination is not based on substantial evidence and the ALJ failed to determine whether use of a cane constitutes a non-exertional impairment that significantly limits Plaintiff's ability to perform tasks at the light exertional level. ECF No. 12.

According to Plaintiff, the ALJ's findings fail to account for her limitations which necessitate the use of a cane due to the pain and functional limitations caused by her left heel spur. Id., p. 7. The evidence shows Plaintiff uses a cane for ambulation. Id. Plaintiff argues that the ALJ made only a single mention of Plaintiff's use of a cane: "claimant has been prescribed a cane for ambulation." Id., p. 8. However, according to Plaintiff, because the ALJ determined that the cane is "medically required," she was also obligated to determine whether this constituted a non-exertional impairment that significantly limits Plaintiff's ability to perform tasks at the light exertional level. Id., p. 9. Plaintiff cites to Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004) and Drawdy v. Astrue, 2018 WL 4937002, at *4 (M.D. Fla. Nov. 17, 2008) in support.

This is particularly relevant in the determination the Plaintiff has difficulty standing and walking for extended periods of time when performing

an activity on a sustained basis. Id., p. 10. For this reason, the medical evidence does not support the ALJ's finding that Plaintiff can perform light work. Id. According to Plaintiff, the court should reverse the ALJ's finding that she is not disabled. Id.

## III.    Commissioner's Claims

The Commissioner argues, "[c]ontrary to Plaintiff's argument, the ALJ" did, in fact, "include[] a limitation for Plaintiff's use of a cane." ECF No. 13, p. 1. Specifically, the ALJ found that "the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant requires the use of an ambulation device." Id., p. 1 citing Tr. 21. The ALJ also posed a hypothetical to the VE at the hearing and used the term "cane." Id., p. 7. The Commissioner maintains there is no distinction between a cane and "an ambulation device." Id. Moreover, Plaintiff failed to prove that she is totally disabled from all work. Id., p. 5.

The ALJ properly considered the consultative reports, prior administrative medical findings from state agency experts, diagnostic evidence, the records from treating physicians, and Plaintiff's own testimony and found she could perform light work. Id., p. 6. Because Plaintiff cannot show there is a distinction between a cane and an ambulation device, she

cannot prove an error. Id., p. 7. Therefore, the court should affirm the Commissioner's decision, which is supported by substantial evidence. Id.

## IV.   Legal Standards Guiding Judicial Review

Review of the Commissioner's decision is limited. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1986). This Court must affirm the decision if it is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, 703 at 1239 (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).[2]

The Court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner, Bloodsworth, 703 F.2d

---

[2] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

at 1239, although the Court must scrutinize the entire record, consider evidence detracting from the evidence on which the Commissioner relied, and determine the reasonableness of the factual findings. Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992). Review is deferential, but the reviewing court conducts what has been referred to as "an independent review of the record." Flynn v. Heckler, 768 F.2d 1273, 1273 (11th Cir. 1985).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see 20 C.F.R. § 404.1509 (duration requirement); Barnhart v. Walton, 535 U.S. 212, 223-24 (2002). In addition, an individual is entitled to disability insurance benefits (DIB) if she is under a disability prior to the expiration of his insured status. See 42 U.S.C. § 423(a)(1)(A); Moore, 405 F.3d at 1211.

The Commissioner analyzes a claim in five steps, pursuant to 20 C.F.R. § 404.1520(a)(4)(i)-(v):

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have the residual functional capacity (RFC) to perform work despite limitations and are there any impairments which prevent past relevant work?[3]

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant

---

[3] An RFC is the most a claimant can still do despite limitations. 20 C.F.R. § 404.1545(a)(1). It is an assessment based upon all of the relevant evidence including the claimant's description of his limitations, observations by treating and examining physicians or other persons, and medical records. Id. The responsibility for determining claimant's RFC lies with the ALJ. 20 C.F.R. § 404.1546(c); see Social Security Ruling (SSR) 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) ("The term '*residual functional capacity assessment*' describes an adjudicator's finding about the ability of an individual to perform work-related activities. The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence."). The Court will apply the SSR in effect when the ALJ rendered her decision. See generally Bagliere v. Colvin, No. 1:16-CV-109, 2017 U.S. Dist. LEXIS 8779, at *10-18, (M.D. N.C. Jan. 23, 2017), *adopted*, 2017 U.S. Dist. LEXIS 51917 (M.D. N.C. Feb. 23, 2017).

bears the burden of establishing a severe impairment that precludes the performance of past relevant work. Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work. If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled. If the claimant satisfies this burden of demonstrating he cannot do prior work, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience. Phillips v. Barnhart, 357 F.3d 1232, 1237-39 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g)). If the Commissioner carries this burden, the claimant must prove that she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that she is disabled, and consequently, is responsible for producing evidence in support of her claim. See 20 C.F.R. § 404.1512(a); Moore, 405 F.3d at 1211. The responsibility of weighing the medical evidence and resolving any conflicts in the record rests with the ALJ. See Battle v. Astrue, 243 F. App'x 514, 523 (11th Cir. 2007).

As the finder of fact, the ALJ is charged with the duty to evaluate all the medical opinions of record and resolve conflicts that might appear. 20

C.F.R. § 404.1527. When considering medical opinions, the following factors apply for determining the weight to give to any medical opinion: (1) the frequency of examination and the length, nature, extent of the treatment relationship; (2) the evidence in support of the opinion, such as "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight\ that opinion is given; (3) the opinion's consistency with the record as a whole; (4) whether the opinion is from a specialist and, if it is, it will be accorded greater weight; and (5) other relevant but unspecified factors. 20 C.F.R. § 404.1527(b) & (c)(1)-(6).

"[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987). Further, the ALJ must give a treating physician's opinion "substantial or considerable weight" absent "good cause." Id. (quotation marks omitted); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). This is so because treating physicians

> are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of

individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c)(2). "This requires a relationship of both duration and frequency." Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003). "'[A] medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records.'" Id. (citing Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). The reasons for giving little weight to the opinion of the treating physician must be supported by substantial evidence, Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992), and must be clearly articulated. Phillips, 357 F.3d at 1241. "The Secretary must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

"The ALJ may discount the treating physician's opinion if good cause exists to do so." Hillsman v. Bowen, 804 F. 2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supports a contrary finding," the opinion is "conclusory" or "so brief and conclusory that it lacks persuasive weight," the opinion is "inconsistent with the treating physician's own medical records,"

the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence." <u>Lewis</u>, 125 F.3d at 1440; <u>Edwards v. Sullivan</u>, 937 F.2d 580, 583 (11th Cir. 1991) (citing <u>Schnorr v. Bowen</u>, 816 F.2d 578, 582 (11th Cir. 1987)). Further, where a treating physician has merely made conclusory statements, the ALJ may afford them such weight to the extent they are supported by clinical or laboratory findings and are consistent with other evidence as to a claimant's impairments. <u>Wheeler v. Heckler</u>, 784 F.2d 1073, 1075 (11th Cir. 1986). However, if the decision of the ALJ is explained and relies on evidence in the record it should be upheld. "We will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it." <u>Hunter v. Soc. Sec. Admin. Comm'r</u>, 808 F.3d 818, 823 (11th Cir. 2015).

## V.   Legal Analysis

### A. <u>Findings of the Administrative Law Judge (ALJ)</u>

The Court begins its analysis by first outlining the ALJ's determinations. The ALJ found that Plaintiff had not engaged in substantial gainful activity since May 31, 2019, the alleged onset date. Tr. 20. The ALJ

found that Plaintiff had "the following severe impairments: chronic asthma, obesity, and left heel spur." Id. Plaintiff does not contest these findings.

The ALJ also found that the "osteoarthritis of the left knee is a non-severe impairment because it does not cause a limitation that has more than a minimal effect on claimant's capacity to perform basic work activities." Tr. 21. Based on the medical evidence, Plaintiff's condition "established only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to work." Id. The ALJ considered all "claimant's medically determinable impairments, including those that are not severe, when assessing the . . . residual functional capacity." Id. Plaintiff does not contest this determination.

The ALJ made other findings. Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Id. Specifically, the ALJ stated "[n]o treating or examining source has indicated findings that would satisfy the severity requirements of any listed impairment. Id. Plaintiff "has the residual functional capacity to perform light work . . . except [she] requires the use of an ambulation device." Id. It appears that Plaintiff is contesting this finding. The ALJ explained that she considered all symptoms and the extent to which these symptoms can reasonably be

accepted as consistent with the objective medical evidence and other evidence." Id. The ALJ would "follow a two-step process": (1) "whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce [Plaintiff's] pain or other symptoms" and (2) an evaluation of "the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit [Plaintiff's] work-related activities." Id., p. 22.

The ALJ determined that Plaintiff has the RFC to perform light work. Tr. 21. The ALJ noted Plaintiff's medical history and stated she "cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions, including those from medical sources." Id., p. 24. In particular, the ALJ found that the opinion by the agency medical consultant, Dr. Andrew Scanameo, was only partially persuasive because he did not evaluate Plaintiff's need "to use an ambulation device." Id., pp. 24-25. Still, the ALJ found that Plaintiff's "allegations and contentions regarding the nature and severity of the impairment-related symptoms and functional limitations" were "only partially consistent with the medical evidence . . . [and] not fully supported." Id., p. 25.

The ALJ found that Plaintiff was unable to perform any past relevant work. Tr. 26. This determination was due following consideration of the VE's

testimony that Plaintiff's "past relevant work [housekeeping and baby-sitting] exceed[ed] her current residual functional capacity." Id. "Transferability of job skills [was] not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [Plaintiff] is 'not disabled.'" Id. In short, because Plaintiff "had the residual functional capacity to perform the full range of light work, a finding of 'not disabled'" was warranted. Id., p. 27. Nonetheless, Plaintiff's "ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations." Id. The VE testified that considering all factors, Plaintiff can perform the following light representative occupations: routing clerk, small parts assembler, and office helper. Id.

Finally, the ALJ determined Plaintiff has not been under a disability, as defined in the Social Security Act, from May 31, 2019, through the date of this decision." Tr. 27.

According to Plaintiff, the ALJ's RFC finding is not based on substantial evidence because the ALJ failed to determine whether using a cane constitutes a non-exertional impairment that significantly limits Plaintiff's ability to perform tasks at the light exertional level and failed to account for her limitations from her left heel spur. ECF No. 12, pp. 7-8.

### 1. Buford's Testimony

At the beginning of the hearing, Plaintiff's counsel explained that Plaintiff has a "prescription" for a cane and "[her] use of the cane [w]as documented in the file." Tr. 38. However, Plaintiff gave no testimony about using a cane. Tr. 38-56. Plaintiff testified that she was a 52-year-old, high school graduate with some vocational training in computer programming. Tr. 38, 45. She receives Medicaid and food stamps. Tr. 45-46. Plaintiff further testified about her prior employment as a babysitter, telemarketer, hotel housekeeper, security guard, and working at a church during 2018 and Whataburger around 2000. Tr. 46-50, 59. Plaintiff stated she had several health issues including gastrointestinal problems related to her gallbladder and ulcers, asthma, arthritis in the left knee, and a left heel spur. Tr. 41-44.

Plaintiff's daily routine consisted of doing household chores "like sweeping . . . cleaning, and mopping." Tr. 43. When doing household chores, Plaintiff gets "wheezy or tired" and has "to sit down a lot, like 15 to 20 minutes off and on" and uses the "machine" for her asthma to "feel better." Tr. 43. She can vacuum, dust, clean the bathroom and do housework sustainably for "15 to 20 minutes" before her foot and arthritis causes her pain and can stand "10 to 15 minutes tops" before she needs to take a break. Tr. 45, 51, 53. Plaintiff cooks approximately two times per week and goes grocery

shopping twice per month, although her daughter often does it for her. Tr. 44. Two of Plaintiff's children, 16-year-old twins, live with her and assist with household chores. Tr. 39. She attended church regularly. Id.

Plaintiff uses inhalers and a nebulizer for her asthma and other medications for her gastrointestinal conditions. Tr. 42-43. The arthritis in Plaintiff's left knee and the heel spur "causes . . . a lot of pain . . . sometimes [she] can't even get up in the morning it hurts so bad." Tr. 44. Plaintiff testified the heel spur has been an issue for her for "about a year." Tr. 50. To alleviate the pain, Plaintiff takes ibuprofen 800 mg, tramadol, and naproxen depending on the intensity, which she claims is a level eight (out of ten) on an average day. Tr. 54. Hot baths help her "feel better." Tr. 55. If Plaintiff goes grocery shopping, she uses "the electric chair" (a mobility scooter) to move about the store. Tr. 45. Plaintiff wears "special socks" with "orthopedic inserts," wraps her leg with ice, and elevates her leg three to four hours per day. Tr. 52.

### 2. Dr. Cosgrove's (VE) Testimony

The ALJ posed a hypothetical to the VE, which included the ability to stand and walk for six hours per day:

> Us[ing] the same limited, light RFC, but the individual would need to use a cane when ambulating. Would that individual be able to do the past work or any other work?

Tr. 62. The VE testified that "prior work is certainly going to be out . . . a cane would not allow for that. But there could be other such positions that could fall within the purview of that." Id. According to the VE, Plaintiff could perform light, unskilled work as a routing clerk, small product assembler, and office helper but this was "not an exhaustive list." Tr. 63. On cross-examination, the VE testified that Plaintiff did not have any transferable skills to a lesser exertional level. Tr. 64. Plaintiff's counsel presented a hypothetical to the VE:

> [i]nstead of standing and walking for six hours a day, to standing and walking for two hours a day, with the use of a cane, as an additional limitation, would that change your opinion as to the availability of the claimant's past work, or any other jobs?

Tr. 65. The VE responded, "[i]f [Plaintiff] can only stand and walk two hours and . . . must use an assistive device – a cane – [she] certainly can't be a [h]ousekeeper." Tr. 64-66.

### 3. Plaintiff's Medical Records

Because Plaintiff does not contest the findings relating to her other medical conditions, the court focuses its discussion on the records which correlate to Plaintiff's knee and heel spur conditions. Plaintiff presented to the emergency room (ER) at Baptist Hospital on numerous occasions from 2018 through 2020, most of which were unrelated to her knee and heel conditions. On February 23, 2018, Plaintiff was generally feeling well but had

leg cramps and rated her pain as "0" (out of 10); her posture and gait were "normal"; she had "no edema" in her lower extremities and could move all extremities. Tr. 340-41. On May 29, 2018, Plaintiff saw Dr. Samson for a follow-up exam and was found to be feeling "well with minor complaints" with "normal" posture and "normal" gait. Tr. 336-37. Plaintiff rated her pain as "0," had no edema in her lower extremities, and could move all extremities. Tr. 337. On October 29, 2018, Plaintiff went to the ER complaining of diarrhea, nausea, and vomiting. Tr. 413. She had no joint stiffness or weakness in the musculoskeletal system, no tenderness or edema in the extremities, and could move all extremities. Tr. 413-15. On November 16, 2018, she went to the ER complaining of shortness of breath but denied any other medical problems. Tr. 389. She had no swelling or edema, did "not appear to be acutely ill or toxic," and was "without signs of significant chronic debility." Tr. 391-92.

On March 19, 2019, Plaintiff presented to the ER with flu-like symptoms. Tr. 380. Plaintiff was in no apparent distress, had no motor or sensory deficits, her range of motion was not limited, and there was no muscle or joint tenderness. Tr. 381. Plaintiff had "[g]ood strength in upper and lower extremities" and was "[i]ndependently ambulatory." Id. Plaintiff went to the ER on May 14, 2019, complaining of abdominal pain. Tr. 360-62.

Plaintiff had "no joint pain," "no gait disturbance," or "loss of function," "no extremity tenderness or edema"; and she could "move[] all extremities." Tr. 360, 362.

Plaintiff's left knee and heel complaints are first documented in the record on July 18, 2019. Plaintiff went to the ER complaining of foot and left heel pain lasting a couple of weeks. Tr. 355. She was "not sure if she stepped on something" but had "a small, dark spot on her heel in that area." Id. The pain was worse when she walked, but she was in no distress. Id. There was no edema or tenderness in the extremities; still, there was "tenderness with palpitation of the plantar surface." Tr. 357. There was no pain with flexion of the foot; and Plaintiff had 5/5 strength in all extremities. Id. An x-ray showed a heel spur; "otherwise [it was] normal." Id. There were no fractures, dislocation, arthritis, lesions or malalignment, and no foreign body. Tr. 358. On August 28, 2019, Plaintiff saw Dr. Samson and complained of consistent pain from the heel spur lasting one and one-half months. Tr. 437. Dr. Samson gave Plaintiff a referral to podiatry for an evaluation. Id.

On September 30, 2019, agency physician, Andrew Scanameo, determined Plaintiff's primary impairment is asthma. Tr. 82. He determined Plaintiff's RFC included "exertional limitations" for occasionally lifting or carrying 20 pounds, frequently lifting or carrying 10 pounds, standing and/or

walking with normal breaks for about six hours of an eight-hour workday, sitting for six hours out of an eight-hour workday, and pushing and/or pulling was "unlimited." Tr. 83. In Dr. Scanameo's opinion, Plaintiff could sustain "light" work, was "not disabled," and could adjust to other employment including work as a ticket taker, vending machine attendant, and non-checking cashier. Tr. 86. On December 27, 2019, Dr. Roland Gutierrez, an agency physician, reviewed Plaintiff's medical documentation and found that "the objective medical evidence of record [was] insufficient" to "formulate an accurate assessment." Tr. 111. Also, it was noted that Plaintiff "was scheduled for a GM CE[4] 12/16/19. The appt was broken and the clt has not responded to calls or letters since the clt alleged worsening of her condition as of 9/27/2019 and there is no evidence in the file after 8/28/19." Id.

On January 3, 2020, Plaintiff went to the ER complaining about her left heel spur. Tr. 503. She was experienced "sharp stabbing pain" at a "10/10" intensity and was "limping." Id. She reported improvement with ice and rest. Id. The doctor noted "moderate to severe tenderness to the plantar aspect of the left heel. No deformities. Moving all extremities." Tr. 505. Plaintiff was diagnosed with plantar fasciitis. Tr. 506. On January 14, 2020, Plaintiff saw Dr. Samson for a follow up visit complaining of "foot pain with exacerbation

---

[4] The agency uses "CE" to abbreviate "consultative examination." Tr. 110.

at times." Tr. 444. She stated that no one called her to follow up with a podiatrist. Id. Dr. Samson prescribed ibuprofen 800 mg for pain. Id. The record also notes Plaintiff had leg cramps but there was no numbness or tingling; her posture and gait were "normal." Tr. 445. There was no edema in the lower extremities; and she could move all extremities. Tr. 446.

On January 25, 2020, Plaintiff went to the ER for a toothache. Tr. 500. It was noted that Plaintiff had no "stiffness" in her musculoskeletal system, her spine was "normal, range of motion is not limited, no muscle or joint tenderness. And there were no motor or sensory deficits." Tr. 500-01. Nine days later, on February 3, Plaintiff returned to the ER for acute abdominal pain resulting from gallstones. Tr. 484. Again, there was no "stiffness," "spine appear[ed] normal, range of motion is not limited," and there was "no muscle or joint tenderness." Tr. 484, 486, 489.

On February 25, 2020, Plaintiff went to Escambia Community Clinic. Tr. 443. For the first time it was noted that Plaintiff "uses a [c]ane." Id. There is no further explanation of the use of the cane. Id. On April 9, 2020, Plaintiff went to the ER for abdominal pain. Tr. 451. According to notations in the record, there was no swelling, extremity edema, or tenderness; she was in no acute distress, had "normal gait and station," and the "joints and limbs [were] grossly normal." Tr. 452, 454, 469. Apparently, on the same day,

Plaintiff had an office visit for prescription refills. Tr. 509. This record notes that Plaintiff began using a cane on January 14, 2020. Tr. 509. Plaintiff also complained of leg cramps. Id. Although Plaintiff could move all extremities, she reported localized tenderness on the plantar aspect of her heel. Tr. 510. The doctor prescribed ibuprofen 800 mg and recommended continued use of the cane. Tr. 511. The doctor also informed Plaintiff that "the heel spur and associated foot pain can be resolved with weight loss."[5] Tr. 511.

On July 21, 2020, Plaintiff went to the ER complaining of left lower leg pain and left medial knee pain. Tr. 542. She "state[d] it has been swelling and locking up on her. Symptoms for 2 weeks . . . it is just not improving . . . Pain is worse with ambulation. Nothing makes it better." Tr. 535, 547. There was "tenderness with palpation of the medial joint line and just below the knee." Tr. 538. It was noted that Plaintiff had "[m]ild tricompartment osteoarthritis left knee. No fracture, joint effusion, or bone destruction. No periosteal reaction" and "soft tissue swelling." Tr. 539-40, 547. The doctor ordered Plaintiff to "treat [the knee] with [an] Ace wrap and some tramadol" and "follow up with her doctor for further treatment referral if symptoms are not improving." Tr. 540. Five days later, on July 26, Plaintiff went to the ER

---

[5] Plaintiff was diagnosed with obesity; and her BMI was 38.0-38.9, which is "above normal parameters." Tr. 511. She was given exercise and dietary counseling. Id.

complaining of abdominal pain; and it was noted she had "no tenderness, no calf tenderness" in her extremities and "normal strength and sensation, no appreciable deficits." Tr. 518.

4. *Whether the ALJ's Residual Functional Capacity Determination is Based Upon Substantial Evidence Because She Did Not Assess Non-Exertional Limitations.*

"There are two avenues by which the ALJ may determine whether the claimant has the ability to adjust to other work in the national economy": (1) the Medical Vocational Guidelines (grids) or (2) "the use of a vocational expert." Phillips, 357 F.3d at 1239-40. Specifically, if the ALJ determines that a claimant's non-exertional limitations significantly limit basic work skills at the sedentary work level, then the ALJ must consult a vocational expert. Plaintiff argues that because the ALJ determined the cane is "medically required," she was also obligated to determine whether this constituted a non-exertional impairment that significantly limits Plaintiff's ability to perform tasks at the light, sedentary work level. Not necessarily so.

Here, the ALJ outlined the various medical records and considered them. Tr. 23-24. The records show that Plaintiff required the cane for walking, which is an *exertional* function. Baker v. Comm'r of Soc. Sec., 384 F. App'x 893, 896 (11th Cir. 2010). Baker is particularly instructive in this case because the plaintiff argued that the ALJ was obligated to determine whether

use of the cane constituted a non-exertional impairment that significantly limited Baker's ability to perform all basic exertional- and non-exertional sedentary tasks. Id. at 896. The Court found that the ALJ did not err by relying on the Grids to determine Baker was not disabled where there was "no evidence to suggest that" -- other than Baker's own testimony -- the "use of a cane is a non-exertional limitation." Id.

The ALJ considered Dr. Scanameo's opinion that Plaintiff could perform a light range work restriction but only found this partially persuasive because he failed to evaluate Plaintiff's need "to use an ambulation device." Tr. 24-25. The ALJ considered Plaintiff's "statements about the intensity, persistence, and limiting effects of her . . . left heel spur" and found it "inconsistent with the substantial objective medical evidence." Tr. 25. It is significant that Plaintiff provided no testimony about her use of a cane. "Credibility determinations are the province of the ALJ." Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005). As outlined above, and articulated in the ALJ's decision, the medical evidence shows that Plaintiff had normal posture and gait, 5/5 lower extremity strength, the ability to move all of her extremities, required conservative treatment, and used a device -- the cane -- to ambulate. Tr. 25.

Most importantly, the ALJ consulted a vocational expert (not the Grids) and specifically asked whether an individual could perform Plaintiff's "past work" or "any other work" if she "need[s] to use a cane when ambulating." Tr. 62. The VE testified that use of a cane "would not allow for" the "prior work"; however, Plaintiff could still perform light, unskilled work as a "routing clerk . . . small product assembler . . . [and] office helper." Tr. 63. The ALJ permissibly relied on the VE's testimony and other evidence in the record to conclude that Plaintiff "has the residual functional capacity to perform light work . . . except [she] requires the use of an ambulation device." Tr. 21.

The record contains no evidence to suggest that Plaintiff's use of a cane was a *non-exertional* limitation that would significantly limit Plaintiff's basic work skills at the sedentary work level. The ALJ did not err in finding that Plaintiff has the RFC to perform light work; and, therefore, she is not disabled. Substantial evidence supports the ALJ's determination.

## VI.  Conclusion and Recommendation

It is respectfully RECOMMENDED that the Court AFFIRM the Commissioner's decision because it is supported by substantial evidence and is premised on the proper legal principles. 42 U.S.C. § 405(g); Lewis, 125 F.3d 1439. It is further recommended that the case be closed.

IN CHAMBERS at Tallahassee, Florida, on February 7, 2021.

**/s/ Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).